## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF LOUISIANA
## SHREVEPORT DIVISION

| | | |
|---|---|---|
| MELISSA GODINEZ | : | CIVIL ACTION NO. |
| | : | |
| V. | : | JUDGE: |
| | : | |
| NORTHWEST PIPE COMPANY | : | MAGISTRATE: |
| | : | JURY DEMAND |

## COMPLAINT

NOW INTO COURT, through undersigned counsel, comes MELISSA GODINEZ, ("Plaintiff"), who respectfully represents the following:

### I. JURISDICTION

1.      This is an action for declaratory, injunctive and monetary relief for discrimination and retaliation in violation of Title VII of the Civil Rights Act, as amended, by the Civil Rights Act of 1991, codified at 42 U.S.C., Section 2000 et. seq. Jurisdiction is based on 42 U.S.C. Section 2000e-5(f)(3) and 28 U.S.C. Section 1331 and 1332.

### II. PARTIES

2.      Plaintiff, MELISSA GODINEZ ("Plaintiff"), is an adult female and a resident of State of Texas currently residing in Bexar County, Texas.

3.      Made Defendant in this action is:

(a)      NORTHWEST PIPE COMPANY, ("Northwest" or "Defendant"), is a company registered and doing business in the State of Louisiana, who may be served through its registered agent Corporation Service Company at 320 Somerulos St. Baton Rouge, LA 70802.

4.      At all times referred to in this Complaint, Defendant was engaged in an industry affecting commerce.

5.      Defendant was Plaintiff's "employer" within the meaning of 42 U.S.C. 2000e-(b); La. R.S. 23:301 *et*. *seq*. and La. R.S. 23:967.

### III.  VENUE

6.      Venue lies in this Court as the unlawful employment practices and other actions made the basis of this suit occurred within the Western District of Louisiana.

### IV. FACTUAL ALLEGATIONS

7.      Plaintiff, MELISSA GODINEZ, started working with Defendant on August 31, 2009 in various temporary and full-time positions, until she was offered a position as a Corporate Management Representative on February 16, 2011. Winsor Jenkins, Vice President of Human Resources, laid her off on February 16, 2012, due to alleged "corporate restructuring", when she was 36 weeks pregnant.

8.      During her tenure at Northwest, Plaintiff's evaluations were always excellent and she never received a reprimand. In fact, in August 2011, Gary Stone ("Stone"), Plaintiff's supervisor, completed a Myers Briggs personnel evaluation of her job performance in preparation for Pipe University, a professional development conference. On a scale of 1 to 5, Plaintiff was rated a 4 or 5 in almost all categories ranging from written and verbal communication, product knowledge, and various job performance categories.

9.      During the week of October 16, 2011, at a corporate training event in Skamania, WA, about twenty employees were gathered at a restaurant at the end of the day, including Scott Montross, ("Montross") Chief Operating Officer.  When Montross noticed that Plaintiff was not

drinking, he inquired if there was a reason why she was not drinking. Plaintiff pointed to her stomach and said, "Didn't you hear the news? I'm pregnant!"  Montross replied, "Why would you go and do that?" and returned to drinking with others. Montross left the conference shortly after.

10.    During a routine business call in November, 2011, Stone casually mentioned to Plaintiff that Montross had been in his office and, among other things, Montross "asked several questions" and "made several comments" regarding Plaintiff's pregnancy.  Plaintiff asked Stone exactly what was said, but he dismissed her request to repeat anything, and abruptly ended the call. When Plaintiff arrived home that evening, she wanted to clear up any misconceptions regarding her pregnancy or intent to return to work, so she sent Stone an e-mail explaining that Montross had previously made a comment to her about her pregnancy, and that she was now worried about how the issue would affect her employment. Stone called Plaintiff that evening and tried to dismiss her worries. Plaintiff told him she was going to call Montross the next day to reiterate her plan to return to work after the delivery.   Stone advised Plaintiff not to call Montross, and Plaintiff followed his advice.

11.    Following these events, Stone cancelled two events for which Plaintiff was responsible, with no explanation. Whereas they previously communicated via e-mail or phone several times a week, Stone almost completely ceased communication with Plaintiff. Due to this ostracization, Plaintiff could not move forward on various projects without his approval.

12.    Plaintiff wrote Stone several e-mails requesting that they formalize a plan for coverage during Plaintiff's maternity leave, and that they complete her annual review and goal setting prior to leave. Stone asked Plaintiff to submit a proposal for coverage, and stated they

would accomplish the other items shortly. When there was no further action on Plaintiff's requests, Plaintiff made follow-up requests. Stone ignored all requests.

13.     In January, 2011, Libia Moreno ("Moreno") was hired as the Bossier Quality Manager. While Stone was in town to train her, Plaintiff brought up her goal to outline maternity leave coverage. Stone asked how long Plaintiff would be out of the office, and Plaintiff stated six weeks full time, and then she would return part time for a short time. Moreno stated, "That is too long to be out of the office." When Plaintiff replied she believed she was covered under federal law for this leave, Stone said they would have to discuss the issue later. When Plaintiff brought up the topic in a later meeting, Stone said they were out of time, and that Plaintiff was to call him the following week.

14.     Plaintiff reviewed her plan for covering her Bossier City responsibilities during her maternity leave with Moreno the next week. Moreno dismissed Plaintiff's proposal, stating that she and Stone had "a plan" for Brad ("Brad", last name unknown), a new hire, to cover Plaintiff's responsibilities, such as maintaining the Quality Management System documentation and maintaining daily quality data. Plaintiff asked when Brad would be starting so she could train him, and Moreno could not give her a date. When Plaintiff asked what she would be doing when she returned from leave, Moreno stated Brad would maintain her current responsibilities. Plaintiff reminded Moreno that her job was protected under federal law, and Moreno responded again that she and Stone "had a plan"; however, Plaintiff was never informed of what "the plan" entailed.

15.    When Plaintiff inquired with Stone what this "plan" involved, he directed her to simply focus on responsibilities to Bossier City by assisting the Operations Manager with miscellaneous projects. Plaintiff expressed dissatisfaction with this response

16.    In February, 2012, Plaintiff was eight months pregnant and was worried about her responsibilities being pulled away, so she complained to Jeff McMillian ("McMillan"), Director of Human Resources for Tubular Products, regarding her concerns. McMillan stated that he understood why Plaintiff was concerned; however, there was nothing he could do to help. He reviewed the parameters of federal law with Plaintiff and reassured Plaintiff that her job was protected.

17.    Plaintiff requested a confidential meeting with Winsor Jenkins ("Jenkins"), Vice President of Human Resources, while he was visiting the Bossier City office the following week. Plaintiff asked Jenkins if she should be worried about her job, he laughed and said "yes" explaining that the Quality Assurance Department was under scrutiny for having too many employees and anyone who worked in Quality Assurance should be alarmed and then dismissing Plaintiff's concern that these concerns had anything to do with her upcoming maternity leave.

18.    On February 16, 2012, Jenkins made a return visit to Bossier City, entered Plaintiff's office around 10 A.M. and stated to her "I have bad news for you.  Gary has eliminated your position. You no longer work for Northwest Pipe." Plaintiff asked for an explanation, and he stated that he had none.

19.    Plaintiff stated that she understood reduction in force, but she could not understand why two temporary employees at the facility (one in shipping and one in quality

assurance, both of whom Plaintiff had trained and who had less seniority than Plaintiff) were allowed to stay, but she was being laid off.  Jenkins had no response.

20.     McMillian was also in town and came into Plaintiff's office shortly after. He stated that he did not understand what was going on, but he reassured Plaintiff that he would be in contact with her the following week with some explanation or the opportunity to complete an exit interview; however, McMillian made no other attempt to contact Plaintiff.

21.     Stone made no contact with Plaintiff either, nor was she allowed to complete an exit interview with Human Resources.

22.     In March 2012, bonuses were paid to all employees due to a successful 2011 performance.  Plaintiff did not receive this bonus.

23.     On April 4, 2012, exactly six weeks after Plaintiff's employment at Northwest was terminated, Brad started working at the Bossier City facility as Process Control Manager. Although his title is different than Plaintiff's Corporate Management Representative title, Brad replaced Plaintiff in the corporate structure and was assigned Plaintiff's exact responsibilities and job duties and occupied Plaintiff's former office.

24.     Plaintiff believes that to this date, in a company of about 1200 employees covering a corporate office and eight other facilities, no other employee has been laid off in any form of restructuring.

### V.  CAUSES OF ACTION

**Gender Discrimination/Retaliation 42 U.S.C. Section 2000e-5(f)(3)**

25.     Plaintiff incorporates by reference, as if set out in full, the allegations of Paragraphs 1-24 above.

26.     The actions, conduct and practices of Defendant complained of herein constitute purposeful discrimination against Plaintiff based upon her sex (pregnancy discrimination) and/or retaliation for her complaints regarding said purposeful discrimination in violation of 42 U.S.C. Sections 2000e *et. seq.*

27.     As a result of the foregoing, Plaintiff has suffered emotional distress and associated physical health problems and a loss of wages.

28.     Defendant's actions complained of herein were performed with malice or reckless indifference to and in knowing violation or reckless disregard of Plaintiff's federally-protected rights and caused Plaintiff emotional distress.

29.      Plaintiff timely filed a complaint with the Equal Employment Opportunity Commission and has received the Notice of Right to Sue.

## VI.  JURY TRIAL DEMANDED

28.     Plaintiff demands a trial by jury as to all matters permitted by law.

## VII.  RELIEF

WHEREFORE, PLAINTIFF PRAYS:

(A)     that the Court declare the employment practices of which complaint is made to be in violation of 42 U.S.C. Section 2000(e) *et. seq.*, and otherwise inculpatory and illegal;

(B)     that the Court order Defendant to cease the discriminatory enumerated herein and enjoin Defendant from engaging in further discrimination or retaliation against Plaintiff;

(C)     that the Court order Defendant to pay front pay and lost future wages in amounts to be determined by the jury;

(D)     that Plaintiff be awarded back pay, including prejudgment interest, and any other

benefits or seniority to which he may have been entitled or which  she may have lost as a result of the discrimination or retaliation against her;

(E)     that Plaintiff be awarded compensatory and liquidated punitive damages pursuant to 42 U.S.C. 1981a;

(F)     that Plaintiff be awarded the costs of this action, including attorneys' fees, pursuant to 42 U.S.C. Section 2000(e)-5(k) and other applicable State law;

(G)     for trial by jury for those matters triable to a jury; and

(H)     that Plaintiff be awarded such other and further relief as the Court finds equitable, just and proper.

Respectfully submitted,

DAVIDSON, JONES & SUMMERS
A Professional Law Corporation
509 Market Street, Suite 1000
Shreveport, Louisiana 71101
Phone: (318) 424-4342
Fax: (318) 226-0168

Allison A. Jones, Bar No. 16990


By:_____ */s/Allison A. Jones*_____
                ATTORNEYS FOR PLAINTIFF

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | | |
|---|---|---|
| MELISSA GODINEZ | : | CIVIL ACTION NO. |
| | : | |
| V. | : | JUDGE: |
| | : | |
| NORTHWEST PIPE COMPANY | : | MAGISTRATE: |
| | : | JURY DEMAND |

## VERIFICATION

I, MELISSA GODINEZ, depose and state that I am the Plaintiff in the foregoing

Complaint, that I have read the Complaint, and that all of the allegations contained therein are true

and correct to the best of my knowledge, information and belief.

_____
MELISSA GODINEZ

SWORN TO AND SUBSCRIBED before me, Notary Public, this __3ʳᵈ__ day of

__December__, 2014.

_____
NOTARY PUBLIC

SEAN M. HERSEY
Notary Public, State of Texas
My Commission Expires
February 08, 2016

1